# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60667
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 27, 2018

Lyle W. Cayce
Clerk

TADESSE MENGISTU,

　　　　　　　　　　　　　Plaintiff - Appellant

v.

MISSISSIPPI VALLEY STATE UNIVERSITY; DOCTOR JONGCHAI KIM,

　　　　　　　　　　　　　Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:16-CV-65

Before KING, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

　　Tadesse Mengistu is an Ethiopian-born U.S. citizen and an associate professor in the Department of Business Administration at Mississippi Valley State University. In 2013, his department hired a candidate from South Korea with substantial private sector experience as an assistant professor. Mengistu later discovered that the newly hired assistant professor made more than he did and sued. He alleged that the university and department chair Jongchai

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60667

Kim (who happens to be Korean) discriminated against Mengistu by paying the newly hired professor a higher salary despite his lower rank and lesser qualifications. Following discovery, the district court granted summary judgment. Because we conclude that Mengistu has failed to offer evidence of discrimination and to rebut defendants' nondiscriminatory rationales for the pay gap, we AFFIRM.

## I.

Mississippi Valley State University ("MVSU") is a public university in Itta Bena, Mississippi. It assigns its faculty one of four ranks: professor, associate professor, assistant professor, or instructor. Professor is the highest rank, and instructor is the lowest. Then-president of MVSU William B. Bynum testified at a deposition that, although most universities assign pay by rank, MVSU did not. Instead, MVSU determined salaries for each faculty member at the time of hire based on the availability of appropriated funds and the new faculty member's qualifications.

Tadesse Mengistu is U.S. citizen born in Ethiopia. Since 2006, he has been an associate professor of economics in the Department of Business Administration at MVSU. When Mengistu was hired, he accepted a salary of $68,000, the amount budgeted for his position at the time of his hire. MVSU raised his salary in 2007 to his current salary of $70,380. Mengistu renewed his contract at that level of pay every year from 2007 to 2016.

In 2013, after an economics professor retired, MVSU sought to hire an assistant professor in the Department of Business Administration. A search committee was formed, consisting of Mengistu and three other faculty members. The committee reviewed and ranked six applications. Jongchai Kim, the department chair, reviewed the committee's recommendations. One of the applications, Jeong Beom Lee, was ranked second by Mengistu and first by the remaining faculty members, making him the highest scoring candidate.

No. 17-60667

Although he was hired only as an assistant professor, Lee was offered a salary of $75,000—over $4,000 more than Mengistu, who was an associate professor. Kim testified at his deposition that he lacked authority to make a salary recommendation and that he instead accepted the recommendation of MVSU's vice president of academic affairs, Anna Hammonds.

Mengistu contends that Lee was paid more because, like Kim, Lee is Korean. According to Mengistu, the pay disparity is unjustified because Mengistu is more qualified than Lee and holds the higher rank of associate professor. Mengistu testified at his deposition that the job opening in the Department of Business Administration was in economics. Because Lee's Ph.D. is in finance rather than economics, he was less qualified for that position in Mengistu's view. Mengistu also argues that Lee was less qualified because most of his experience was in the private sector and he had only been an adjunct professor, whereas Mengistu had years of experience as a professor. Mengistu claims that Kim later retaliated against him for his opposition to Lee by recommending that MVSU terminate him and deny his tenure application.

Mengistu sued MVSU and Kim in federal district court, alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as well as various state law torts. Following discovery, MVSU and Kim filed a motion for summary judgment. The district court granted the motion. It held that Mengistu had failed to show that he was similarly situated to Lee, who was hired years later with different experience. The district court also concluded that Mengistu had failed to rebut the defendants' nondiscriminatory explanations for the pay disparity—i.e., Lee's experience and the availability of funds. It likewise dismissed Mengistu's hostile work environment claim because he had failed to come forward with any specific facts indicating pervasive abuse based on his race or national origin. Finally, the district court

No. 17-60667

dismissed Mengistu's state law claims for failure to state a claim. Mengistu appeals the dismissal of his § 1981 and Title VII claims.

## II.

We review de novo the district court's grant of summary judgment. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 257 (5th Cir. 2009). A court must enter summary judgment if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In making that determination, we view the evidence in the light most favorable to the non-movant. *See Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Even so, the non-movant must "come forward with *specific facts* indicating a genuine issue for trial" and cannot merely rely on allegations. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.

In order to make out a prima facie case of pay discrimination under § 1981 or Title VII,[1] a plaintiff must show (1) "that he was a member of a protected class"; (2) "that he was paid less than a non-member"; and (3) "that his circumstances are 'nearly identical' to those of" the better-paid non-member. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522–23 (5th Cir. 2008). After the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer non-discriminatory reasons for the pay disparity. *See id.* at 522. This is a burden of "'production, not persuasion,' and 'involve[s] no credibility assessment.'" *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the employer meets its burden, then the burden swings back to the plaintiff to show that the employer's rationale

---

[1] "The elements of the claims under Title VII and 42 U.S.C § 1981 are identical. We therefore evaluate both claims using the same analysis." *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001) (citation omitted) (citing *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 337 n. 3 (5th Cir. 1999)).

is merely a pretext. *See id.* To do so, the plaintiff must put forward "substantial evidence" to "rebut[] each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). The plaintiff may do so by showing that a discriminatory motive is more likely than a nondiscriminatory one, "or that [her employer's] explanation is unworthy of credence." *Id.* (alteration in original) (quoting *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998)).

Mengistu has failed to carry either burden. As an initial matter, Mengistu has not established his prima facie case because he has failed to show "that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of his protected class." *Taylor*, 554 F.3d at 523. There are key differences between Lee and Mengistu that render Lee an inappropriate comparison. Lee was hired seven years after Mengistu. When Lee was hired as an assistant professor, he had substantial experience working in the private sector in South Korea and a Ph.D. in finance. Mengistu, by contrast, had worked in academia for 20 years by the time he was hired at MVSU and had a Ph.D. in economics. The long lapse in time between their dates of hire and their significantly different backgrounds mean that Lee and Mengistu are not "nearly identical." *Cf. McElroy v. PHM Corp.*, 622 F. App'x 388, 392 (5th Cir. 2015) (noting that coworkers are not appropriate comparators where they "had been hired at different times and had different positions"); *Lee*, 574 F.3d at 260 (noting that an employee is not appropriate comparator if the relevant personnel decisions were "too remote in time from" each one).

Even assuming Lee is an appropriate comparator, Mengistu has failed to rebut defendants' numerous nondiscriminatory explanations for the pay disparity. Defendants explained that Lee had previously worked in the private sector in South Korea and his salary needed to be set at a competitive level. Kim testified that he lacked the authority to determine salaries and that

No. 17-60667

MVSU's vice president of academic affairs made the salary recommendation. Mengistu has offered no evidence to rebut that testimony. Moreover, he has failed to offer "substantial evidence," *see Wallace*, 271 F.3d at 220, that defendants' explanation for the pay disparity is merely pretextual. Rather, he has simply asserted without any other evidentiary support that Lee's finance degree and private-sector background were less valuable than Mengistu's economics degree and academic background. Mengistu's opinion that his experience was more valuable is not—without more—"substantial evidence" of pretext. *See, e.g.*, *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1451 (5th Cir. 1992) (holding that "speculation and belief" are "insufficient to create a fact issue as to pretext"); *E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels he has been discriminated against." (quoting *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983))).

In cases involving discriminatory promotion, this court has held that a plaintiff can show pretext by demonstrating that he was "clearly better qualified." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). Indeed, the plaintiff's "qualifications must 'leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job.'" *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). Even a plaintiff's "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified." *Id.* It is hardly self-evident that Lee's finance degree and private sector experience make him less qualified than Mengistu's economics degree and academic experience for a position in the *Department of Business Administration*—let alone so clear that it leaps from the record and cries out to us.

Defendants have offered another nondiscriminatory rationale that Mengistu has done nothing to rebut—if anything, he has only reinforced it

6

through his own summary judgment evidence. Defendants have explained that a faculty member's salary is determined by the date of hire and the funds then available. Then-president Bynum testified at his deposition that MVSU did not determine faculty compensation by rank. MVSU's vice president of academic affairs testified that a new hire will "[b]y default" receive a higher salary than faculty members in the same department hired years earlier. Mengistu's own evidence at summary judgment underscored this point. He submitted a chart created by MVSU in response to his EEOC charge. That chart showed that Mengistu, an associate professor, actually made almost $2,000 more than a professor hired 13 years before him. Although Mengistu received a one-time salary increase as part of university-wide salary increase, there is no evidence that he ever requested another one. Rather, the evidence at summary judgment showed that he repeatedly signed annual contracts at a salary of $70,380. Accordingly, Mengistu has failed to present any evidence whatsoever that this rationale or any other is a pretext.

Finally, Mengistu's brief argues that Kim's refusal to endorse Mengistu's request for tenure provides "[f]urther evidence of [] unlawful discrimination." Mengistu did not make any allegations related to the denial of tenure in his complaint. His complaint only states that he was *granted* tenure in 2015. Generously construing this as a claim for discriminatory denial of tenure, it fails because he has provided no evidence of discrimination. Mengistu essentially contends that Lee's favorable treatment demonstrates that Mengistu was initially "denied tenure in circumstances permitting an inference of discrimination." *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 257 (5th Cir. 1999). As we have already concluded, defendants' treatment of Lee does not support an inference that their treatment of Lee or Mengistu was motivated by race, ethnicity, or national origin.

No. 17-60667

Consequently, Mengistu has altogether failed to produce any evidence of discrimination. Summary judgment was properly granted.

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of defendants Kim and MVSU.